UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| NANETTE PARTEE, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:06-cv-57 |
| ) | |
| v. ) | Honorable Joseph G. Scoville |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **MEMORANDUM OPINION** |
| Defendant. ) | |
| _____ ) | |

This is a social security action brought pursuant to 42 U.S.C. § 405(g). On December 18, 2003, plaintiff filed the application for disability insurance benefits (DIB) giving rise to this appeal. (A.R. 43-45). Plaintiff's disability insured status expired on December 31, 2003. Plaintiff claimed an August 1, 2002, onset of disability. Plaintiff's claim was denied on initial review. (A.R. 25-29). On August 12, 2005, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 235-72). On August 25, 2005, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-22). The Appeals Council denied review on March 29, 2006 (A.R. 3-5), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a *pro se* complaint in May 2006, seeking review of the Commissioner's decision denying her DIB claim. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 11). Plaintiff's three-page brief expresses plaintiff's dissatisfaction with the ALJ's credibility and RFC

determinations. Plaintiff also argues that the ALJ should have found that she was disabled under Americans with Disabilities Act (ADA) standards. (Plaintiff's Brief, docket #10). Upon review, the court finds that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision. The Commissioner's decision finding that plaintiff was not disabled during the closed period from August 1, 2002, through the expiration of plaintiff's disability insured status on December 31, 2003, is supported by more than substantial evidence. The Commissioner's decision will be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the

Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ – would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on August 1, 2002, her alleged onset of disability, and continued to those requirements through December 31, 2003, but not thereafter. Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. The ALJ found that plaintiff's degenerative disc disease constituted a severe impairment. The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ determined that plaintiff's subjective complaints were not fully credible. The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of two hours out of an eight hour workday, sit for a total of six hours out of an eight

> hour workday. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She must avoid climbing ladders, ropes, and scaffolds.

(A.R. 22). The ALJ found that plaintiff's past relevant work as a credit and collections clerk did not require the performance of work-related activities precluded by plaintiff's RFC. Thus, the ALJ found that plaintiff was not disabled at step-four of the sequential analysis. (A.R. 15-22).

**1.**

Plaintiff disagrees with the ALJ's credibility determination. This court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see also Lawson v. Commissioner*, 192 F. App'x 521 (6th Cir. 2006). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 746. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should

not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Plaintiff disagrees with the ALJ's determination that plaintiff's hearing testimony concerning her "functional limitations for sitting, standing, walking, [] lifting and carrying," "need to lie down after taking her prescribed pain medication" and need to use a cane even when she was seated were not fully credible. The ALJ found that plaintiff's statements concerning her daily activities and the objective medical test results undercut plaintiff's hearing testimony claiming disabling symptoms:

> The claimant testified that she started getting stiffness in 2002.  She received most of her treatment through a VA clinic.  She started taking Tylenol at first for her pain, but that did not help her.  She was later prescribed Vicodin for pain.  Currently she is taking Gabapentin, Acetaminophen, and Neurontin for pain (Exhibit 10E).  [Sh]e stated that her pain medication makes her sleepy and she will sleep for three hours.  She uses a cane whenever she walks.  She saw a neurosurgeon in Ann Arbor who indicated that surgery would not help her because she has to[o] much nerve damage.  She stated that she could walk five minutes, stand for two hours, and sit for less than two hours.  She could lift a gallon of milk.  She has left hand numbness.  She does a lot more with her right hand.  She cannot reach to get something on a shelf.  She stated that weather affects her back.  When she walks with a cane, she leans on the cane to relieve the pain in her back.
>
> The daily activities questionnaire indicated that the claimant could sometimes drive a car.  She can cook three times a week, clean the house two times a week, shop two times a week, and take care of her personal needs on a daily basis.  She cannot do yard work, watch children, play cards, volunteer for activities, talk with neighbors or repair things.  She visits with relatives one time a month, and handles the monthly finances two times a month.  She watches about a total of two hours of television a day, and sleeps four to six hours a day.  She generally gets along well with others and responds well to authority (Exhibit 11 E).
>
> Concerning the claimant's degenerative disc disease, although the MRI scan of April 16, 2003 showed a moderate degenerative disc disease at the L5-S1 level and moderate loss of disc space, there was no evidence of fracture or other acute bony abnormalities (Exhibit 3F).  The medical records indicate improvement in her back (Exhibits 4F, 6F, 7F).  She canceled appointments and did not attend physical therapy sessions as ordered by her treating physician (Exhibits 3F, 4F and 6F).  The claimant reported "feeling somewhat better" in July 2003.  The claimant did not complete the course of physical therapy that was ordered for her

> (Exhibits 4F and 6F). In June 2005, the claimant reported that she did not want any surgery and that her symptoms ha[d] "improved significantly" (Exhibit 7F). Although the claimant uses a cane to help her ambulate, it was her own testimony that she uses a cane "only" on rough grounds.
>
> While the undersigned does not doubt that the claimant experiences some difficulty, her statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the claimant's own description of her activities and lifestyle, the degree of medical treatment required, discrepancies between the claimant's assertions and the information contained in the documentary reports, the claimant's demeanor at the hearing, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions regarding her ability to work.

(A.R. 19-20). Plaintiff argues that the above-quoted excerpt from the ALJ's opinion contains an omission regarding plaintiff's cane use. On January 28, 2004, in response to question #24 of a Michigan Disability Determination Service questionnaire, plaintiff stated that she used the following aids: a "Cane" and "Glasses/Contact Lenses." (A.R. 91). In response to the subsidiary question, "When do you need these aids?" plaintiff responded as follows:

> Cane -- walking on rough ground, any steps or if I'm in pain I use it. The instructions w[ere] all the time to take the weight off my leg.

(A.R. 91). Plaintiff argues that the ALJ erred when he failed to take into account a parenthetical statement "(uses always)" she claims to have written at the end of the above-quoted response. (Plaintiff's Brief at 2-3). A review of plaintiff's written response (A.R. 91) reveals that plaintiff's argument is based on a patently false premise. The above-quoted response was not followed by any parenthetical statement regarding cane use. The quoted text was immediately followed by the words "Glasses - always" -- plaintiff's direct response to the question inquiring when plaintiff needed to use the aids of glasses or contacts. (A.R. 91). The court finds no error, much less error warranting reversal of the Commissioner's decision. Assuming *arguendo* that plaintiff had made a parenthetical statement as she now contends, the parenthetical would not have been material, and would fall far

short of undermining the more than substantial evidence within the administrative record supporting the ALJ's credibility determination.

**2.**

Plaintiff argues that the ALJ "erred by adopting the state agency's residual functional capacity set forth in Exhibit 1F . . . ." (Plf. Brief at 2). Plaintiff cites no legal authority in support of this argument. Exhibit 1F (A.R. 115-22) is an assessment of plaintiff's residual functional capacity as of December 31, 2003 (plaintiff's last day disability insured), made by Angela Machele, D.O., a state agency medical consultant. Dr. Machele observed that plaintiff's medical records indicated a primary diagnosis of degenerative disc disease, specifically referencing plaintiff's April 2003 lumbar spine x-rays (A.R. 148, 157), a May 8, 2003 lumbar spine MRI (A.R. 123, 156), and the results of June and July 2003 medical examinations (A.R. 149-51, 159-79). Based on the medical evidence, Dr. Machele found that on and before December 31, 2003, plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and or carry 10, pounds, stand and/or walk at least 2 hours in an 8-hour workday, sit approximately six hours in an 8-hour workday. Dr. Machele stated that plaintiff should never climb ladders, ropes, or scaffolds. Plaintiff could occasionally climb ramps and stairs and could occasionally balance, stoop, kneel, crouch, and crawl. (A.R. 115-22). The ALJ found that Dr. Machele's assessment was consistent with the record as a whole and gave it considerable weight. (A.R. 20). The ALJ's reliance on this well-supported medical opinion was appropriate. *See Combs v. Commissioner*, 459 F.3d 640, 651-52 (6th Cir. 2006)(*en banc*). The ALJ's finding with regard to plaintiff's RFC is supported by more than substantial evidence.

**3.**

Plaintiff's remaining argument that the ALJ failed to apply ADA standards requires little discussion. The Commissioner denied plaintiff's application for DIB benefits under the Social Security Act by applying the Social Security Act's statutory and regulatory standards. Plaintiff's complaint requested judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (docket # 1, ¶ I). Plaintiff's complaint is devoid of any reference to the ADA.[1] The scattered ADA references appearing in plaintiff's brief do not provide any basis for disturbing the Commissioner's decision. Section 405(g) provides the exclusive basis for judicial review of a final decision of the Commissioner denying plaintiff's application for DIB benefits. 42 U.S.C. §§ 405(g), (h).[2] Section 405(h) states, "The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section

---

[1]If the complaint had alleged that the Commissioner's decision denying plaintiff's application for social security benefits violated the ADA, the claim would have been dismissed for failure to state a claim. The ADA makes it unlawful for a "public entity" to discriminate against a qualified individual with a disability. The Commissioner is not a "public entity" as that term is defined in the ADA. 42 U.S.C. § 12131(1); *see Haynes v. Apfel*, No. 00-3113-JWL, 2001 WL 950244, at * 3 (D. Kan. July 16, 2001).

[2]The standards for determining whether an individual is disabled under the Social Security Act and whether the person is disabled under the ADA are quite different. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999); *Lucas v. Methodist Hosp., Inc.*, 180 F. App'x 585, 586 (7th Cir. 2006); *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 383 (6th Cir. 1997)(Social Security Act's definition of disability "differs materially from the ADA's definition of a 'qualified individual with a disability.'"); *Wilson v. Comfort Sys.*, No. 05-1154-DWB, 2006 WL 3087132, at *6 (D. Kan. Oct. 26, 2006)(collecting cases).

1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h); *see Oakland Medical Group, P.C. v. Secretary of Health & Human Servs.*, 298 F.3d 507, 510 (6th Cir. 2002)(collecting cases).  Reliance on the ADA would therefore be inappropriate in a section 405(g) action to review denial of social security benefits.

## **Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated:  December 20, 2006          /s/  Joseph G. Scoville
                                   United States Magistrate Judge